UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) Cause No. 3:24-cr-00017-MPB-CSW | |
| AARON PAUL LOCKMAN, ) | |
| ) | |
| Defendant. ) | |

### UNITED STATES' SENTENCING MEMORANDUM

Aaron Paul Lockman abused his role as a youth minister, lived a double life and lied to the Court all while trying to convince himself he did not have a problem with child pornography. His continued deceit calls for a high sentence of imprisonment since he still has not accepted responsibility.

For the reasons set forth herein, the United States respectfully recommends a custodial sentence of 121 months' imprisonment. This sentence is sufficient, but not greater than necessary, to achieve all the sentencing objectives set forth in 18 U.S.C. § 3553.

**I.    CHARGES AND PENALTIES**

Defendant was indicted by a federal grand jury and charged with Possession of Sexually Explicit Material Involving Minors, in violation of 18 U.S.C. § 2252(a)(4)(B), on May 16, 2024. (Dkt. 1). Defendant has filed a plea agreement and petition to plead to these charges and is set to plead guilty and be sentenced on February 24, 2026.

## II. BACKGROUND AND OFFENSE CONDUCT

The defendant is pleading guilty to Possession of Sexually Explicit Material Involving Minors in violation of 18 U.S.C. § 2252(a)(4)(B). The investigation revealed a large collection of child sexual abuse material ("CSAM"), including dozens of videos and hundreds of images recovered from the defendant's phone and laptop. There was content found involving prepubescent children under twelve and portraying sadistic and masochistic conduct. A total of 2,165 images were located on the defendant's devices.

The defendant admitted that he viewed CSAM within days of his interview with law enforcement, often viewing the CSAM at work, and that he visited websites and saved images he "liked." He conceded that his laptop contained additional CSAM because he backed up his phone to it.

The most damning aspect is the defendant's role as the children's minister at his church. He was entrusted with boys—many from single-mother households—and routinely took them on one-on-one outings such as trips to McDonald's. Law enforcement concluded that he had begun grooming behavior, and the church asserts it was victimized by his deception and exploitation of trust.

The defendant also lied to investigators, initially claiming he had thrown away his old cell phone, when, in fact, he gave that phone to a minor boy at the church. This conduct directly placed a child at risk.

The defendant's iPad contained disturbing videos of nude child baptisms—especially unsettling given his position. This same position of trust that he took

knowing about his proclivity for child pornography and his prior juvenile adjudication involving child pornography, which demonstrates a sustained and untreated sexual attraction to minors. He failed to disclose all of that to his employers at the church, thereby gaining their trust and the trust of many young children.

### III. GUIDELINES CALCULATIONS

The United States originally agreed with Probation's calculations of the advisory guidelines in this case, which result in a final adjusted offense level of 28. PSR ¶ 37. Defendant's prior criminal convictions result in his placement in Criminal History Category I. PSR ¶ 41. However, once the defendant chose to lie to the Court, the Government believes his guideline range should be changed to reflect his deceit, obstruction of justice, and his willful disregard for the administration of justice.

#### A. Obstruction of Justice

On November 26, 2025, one week before his guilty plea and sentencing, the defendant filed a sentencing memorandum with multiple letters of recommendation (Dkts. 40 and 41). In his sentencing memorandum, the defendant specifically quotes two of the letters purportedly written by other youth ministers, Tonya Truong and Dalton Mouser. (Dkt. 41) . On the morning of the sentencing hearing, the Government learned that neither Ms. Truong (now Ms. Pleasant) nor Mr. Mouser wrote letters of recommendation and certainly never allowed their names and professions to be used on behalf of the defendant.

3

The defendant falsely wrote AND signed these letters and then submitted them to the Court as true character statements. (Dkt. 40-3).

USSG § 3C1.1 applies where a defendant: "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense." Application Note 4 specifically includes: Producing or attempting to produce a false document during a judicial proceeding and providing materially false information to a judge. Forgery of letters submitted directly to the Court at sentencing squarely qualifies. This was direct obstruction of the sentencing process, not peripheral misconduct. The intent was to affect the Court's assessment of character, remorse, and § 3553(a) considerations.

### B. Acceptance of Responsibility

USSG § 3E1.1(b) provides for a 1 level reduction requiring the defendant to timely plead guilty and demonstrate conduct consistent with acceptance of responsibility. Forging letters and lying to the Court after filing a plea agreement is fundamentally inconsistent with acceptance. The defendant did not simply fail to assist authorities — he actively attempted to deceive the Court, which required the FBI to conduct an additional investigation into the defendant's blatant disregard to obey the law. It can be argued that his conduct likely eliminated acceptance entirely. Application Note 4 to § 3E1.1 is explicit: "Conduct resulting in an enhancement under §3C1.1 ordinarily indicates that the defendant has not accepted responsibility." This is not a rare or extraordinary case where obstruction is consistent with acceptance. The forgery shows: continued

dishonesty, willingness to manipulate the justice system, lack of genuine remorse, and a belief that the Court can be deceived.

### IV. ANALYSIS UNDER 18 U.S.C. § 3553(a)

#### A. Nature and Circumstances of the Offense

This crime is exceptionally serious. The defendant possessed some of the most egregious content—depictions of extremely young victims subjected to violent sexual abuse. His collection was not accidental or minimal; it was organized, intentional, and extensive.  Worse still, he engaged in this conduct while working directly with children. The defendant intentionally placed himself in daily proximity to the very population he is sexually attracted to, even after a previous child-exploitation adjudication. He exploited his position as a minister to cultivate special relationships with vulnerable boys. The law enforcement conclusion that he had begun grooming behavior is strongly supported by the facts. His conduct represents a profound breach of trust that has traumatized the church community and placed children at substantial risk. Now, he has directly lied to the Court.  The forged letters demonstrate a pattern of deception involving religious authority, consistent with how he concealed his criminal conduct while working as a minister. This was not impulsive wrongdoing — it was strategic, planned manipulation.  The offense therefore includes both sexual exploitation and deliberate judicial deception, making it more serious than the typical CSAM possession case.

### B. History and Characteristics of the Defendant

The defendant's prior juvenile adjudication for child exploitation is critically important. He has been involved with child sexual exploitation since at least age 15. He successfully completed juvenile probation, yet reoffended as an adult, scaling up both the volume and severity of his conduct. The defendant's mother appears to be an enabling influence, minimizing his conduct and impeding effective supervision, even knowing about the falsely written letters. Even when confronted by law enforcement, the defendant continued to lie—most notably about giving an old phone to a minor boy at the church.

The defendant provided a statement of remorse which the government can only assume is all lies given his most recent criminal conduct of forging letters to the Court. Most importantly, the forgery shows that external accountability has not changed him. Even facing sentencing, he chose deception over truth.

This severely undermines any claim that he is amenable to supervision or rehabilitation without a lengthy incarceration. The pattern of deception, the continued behavior after prior intervention, and the deliberate steps taken to obtain and store CSAM show that the defendant poses a significant risk of reoffending.

### C. Respect for the Law and Just Punishment

Forging letters to a federal judge is a direct assault on the integrity of the judicial process. A sentence that does not account for this conduct would undermine respect for the Court, signal that post-plea deception carries little consequence and reward a defendant who attempted to manipulate sentencing.

A substantial sentence is necessary to reflect not only the seriousness of the exploitation offense, but also the seriousness of lying to the Court to avoid accountability.

### D. Deterrence

The defendant has now demonstrated that a juvenile adjudication did not deter him, adult prosecution did not deter him, a guilty plea did not deter him, and an impending sentencing did not deter him. Only a significant term of imprisonment will interrupt his pattern of manipulation and exploitation. Allowing defendants to submit fabricated mitigation materials without meaningful consequences would encourage similar conduct. A strong sentence reinforces that sentencing fraud will be punished.

### E. Protection of the Public

A person who sexually exploits children, lies to investigators and lies to the Court is not a candidate for lenient punishment.  The forged letters reinforce the defendant's dangerousness to our community's most protected class:  minor children.  The public-especially children-must be protected from someone who has repeatedly shown he cannot be trusted.  The web of lies the defendant has told circumvents any fraction of progress he might have made in therapy, and the forged letters reinforce his dangerousness.

### F. Avoiding Unwarranted Sentence Disparities

Defendants who obstruct justice at sentencing and attempt to deceive the court do not receive a lenient sentence.  Granting leniency here would

create disparity with similarly situated defendants who told the truth, did not fabricate evidence and did not attempt to manipulate sentencing.

## V.     SENTENCING RECOMMENDATION

The Court has broad discretion to impose a lengthy sentence under § 3553(a). The Seventh Circuit has repeatedly emphasized that district courts possess substantial discretion to impose sentences above the advisory Guidelines range when supported by individualized findings under 18 U.S.C. § 3553(a). In *United States v. Walker,* 447 F.3d 999 (7th Cir. 2006), the court explained that after *Booker,* a sentencing judge need only provide a reasoned explanation grounded in § 3553(a) to sustain a sentence above the Guidelines range. In fact, the defendant's prior juvenile adjudication should be considered when considering his sentence and his chance of recidivism. Sentences not counted because of a defendant's age, prior sentences based on crimes similar to the offense of conviction, can be used to depart upward. *United States v. Trigg*, 119 F.3d 493, 502, (7th Cir. 1997). A district court does not abuse its discretion by imposing a substantial sentence when it reasonably concludes that the § 3553(a) factors justify it.

Thus, this Court is fully empowered to impose a lengthy custodial sentence if the facts demonstrate heightened seriousness, risk, and need for deterrence. The defendant's forged letters support a 2-level obstruction enhancement and eliminate acceptance credit. The letters further fundamentally undermine claims of remorse. The 3553(a) factors support a 121-month or greater sentence. The defendant's conduct confirms he is deceptive, manipulative, dangerous and

has no regard for the Court or criminal laws to get what he wants. A lengthy sentence should be given.

Respectfully submitted,

THOMAS E. WHEELER II
United States Attorney

By: *s/ Lauren Wheatley*
    Lauren Wheatley
    Assistant United States Attorney
    Office of the United States Attorney
    101 NW MLK Jr. Blvd. Ste 250
    Evansville, Indiana 47708
    Phone: (812) 465-7405
    Fax: (812) 465-6443
    Email: Lauren.Wheatley@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2026, a copy of the foregoing Government's Sentencing Memorandum was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

By: *s/ Lauren Wheatley*
    Lauren Wheatley
    Assistant United States Attorney